UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ARIF S. IZMIRLIGIL,

                    Plaintiff,                <u>MEMORANDUM AND ORDER</u>

    -against-                    CV 11-5591 (LDW) (AKT)

BANK OF NEW YORK MELLON, *et al.*,

                    Defendants.
----------------------------------------------------------X

WEXLER, District Judge

      Plaintiff Arif S. Izmirligil brings this action against defendants Bank of New York

Mellon f/k/a The Bank of New York ("BNYM"), as trustee for Chase Mortgage Finance Trust

Series 2006 S-2, and JP Morgan Chase Bank, N.A. ("Chase").   Defendants move to dismiss the

amended complaint under Rule 12(b) of the Federal Rules of Civil Procedure.  Plaintiff opposes

the motion.

## I.  <u>BACKGROUND</u>

      For purposes of this decision, the allegations of plaintiff's amended complaint and the

relevant background can be summarized as follows.[1]  On July 26, 2006, Chase extended to

plaintiff a 30-year mortgage loan for approximately $1.1 million (the "Mortgage Loan") for the

purchase of a house in Miller Place, New York (the "Premises").  Amended Complaint ("AC")

¶ 10.  One day later, plaintiff's Mortgage Loan was transferred in a series of transactions and then

pooled as part of a securitized loan trust, identified as the Chase Mortgage Finance Trust 2006 S-

---

[1]Unfortunately, plaintiff's amended complaint and opposing brief are far from models of
clarity.

2 (the "Trust"), pursuant to a "Pool and Servicing Agreement" (the "PSA"); BNYM was appointed trustee of the Trust.  AC ¶¶ 11-17.

On November 30, 2009, BNYM, as trustee, commenced a foreclosure action against plaintiff in Suffolk County Supreme Court (the "Foreclosure Action").  AC ¶¶ 19, 57.  To defend the Foreclosure Action, plaintiff retained counsel, but counsel delayed filing an answer, putting plaintiff in default.  AC ¶ 58.  As a result, plaintiff retained new counsel and moved to excuse his default and extend his time to answer.  AC ¶¶ 58-59.  Supreme Court Justice Thomas F. Whelan denied the motion on July 6, 2010, finding plaintiff failed to establish a justifiable excuse for his default, and denied a motion to renew/reargue on September 22, 2010.  AC ¶ 59.  Plaintiff filed an appeal with the Appellate Division, Second Department; on October 25, 2010, the Appellate Division affirmed the denial of the motions.  AC ¶ 59.

On November 16, 2011, more than five years after the loan was consummated, plaintiff commenced this action, purportedly based on both federal question and diversity jurisdiction. Plaintiff asserts four claims in the amended complaint, couched as:  (1) wrongful foreclosure despite lack of standing; (2) wrongful foreclosure based on deceptive accounting; (3) deceptive practices in the loan origination and abusive lending practices that denied proper disclosures; and (4) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, due to collection of a debt despite awareness of ownership and standing issues.  Plaintiff demands judgment for, *inter alia*, cancellation of the Note and Mortgage, damages, and attorney's fees and cost incurred in "this and related matters."  AC p. 32.

Plaintiff complains that BNYM filed the Foreclosure Action based on a "fraudulently prepared late assignment" of the Mortgage Loan from "Servicer" Chase to "Trustee" BNYM,

dated November 13, 2009.  AC ¶¶ 19-30.  According to plaintiff, the Trust never properly

acquired the Mortgage Loan in 2006, in that it was never properly conveyed to the Trust before

the "Trust Closing Date of September 26, 2006, due to defective documentation and lack of

recording."  AC ¶¶ 31-36.  Plaintiff alleges that the purported conveyance to the Trust on

November 13, 2009 was "fraudulent" and "Late" in that it violated the PSA, the Trust

instrument, and various laws, including the New York Estates, Powers and Trusts Law and the

Internal Revenue Code.  AC ¶¶ 22-25, 36-37.  Plaintiff alleges that the purported transfer of  the

Mortgage Loan to the Trust and late assignment resulted in an "improper chain of title" and

rendered "improper" BNYM's "ownership" of, and "standing" to collect and foreclose on, the

Mortgage Loan.  AC ¶¶ 18-19, 37; *see also AC* ¶ 100 (alleging transfer of Mortgage Loan to

BNYM made through "defective documentation and procedures," creating "broken chain of

title").  Plaintiff alleges that, through these conveyances, BNYM "deceitfully asserted the right to

foreclose on the [Premises]" and "deceitfully alleged that it had assigned the [Mortgage Loan]

pursuant to the [PSA]."  AC ¶¶ 19-21; *see also* AC ¶ 29 (alleging late assignment "evidences

forged signatures, questionable corporate roles and is an unlawfully notarized document").

      Regarding the loan origination, plaintiff complains that Chase "approved and fraudulently

processed" the Mortgage Loan as an interest only loan through an "institutionalized 'ZIPPY

CHEATS & TRICKS' System designed to bypass bank safe guards and standards in Lending,"

but then converted the loan into a principal and interest payment mortgage.  AC ¶¶ 10, 45-47.

Chase failed to provide proper disclosures regarding financing costs, in that, *inter alia*, the actual

finance charges and APR were higher than disclosed.  AC ¶¶ 48-49, 54-56.  Plaintiff also alleges

that Chase "recklessly, knowingly, and intentionally" failed in its duty to verify plaintiff's income

and ability to sustain the loan payments, and "engaged in abusive and unconscionable lending practices." AC ¶¶ 50-53, 137.

Beyond the wrongful conduct in the loan origination, plaintiff complains that Chase "knowingly, recklessly and/or negligently engaged in wrongful foreclosure based on accounting errors." AC ¶ 44. In this respect, plaintiff alleges that Chase engaged in faulty accounting as to plaintiff's payments, resulting in Chase's failure to show all of plaintiff's payments by the time Chase declared plaintiff in default. AC ¶¶ 38-44. Chase also failed to provide plaintiff with payment history, until recently, despite repeated requests, and prepared "Affidavits of Merit and Amount Due without proper notarization and signature." AC ¶¶ 42-43. According to plaintiff, he applied for a loan modification on May 5, 2009, but Chase refused to accept mortgage payments during the modification process, putting plaintiff in default. AC ¶¶ 68. In this respect, plaintiff contends that, contrary to Chase's "faulty accounting," he was up to date with payments as of July 22, 2009, but Chase sent an acceleration letter dated July 22, 2009 and refused to accept payments after that date. AC ¶ 70. Plaintiff contends that Chase deceitfully pursued a "Dual Path of Foreclosure and Loan Modification." AC ¶ 71.

Plaintiff further complains that he did not have a "full and fair trial" or "hearing on merits" in the Foreclosure Action, and that he was "unable to obtain full discovery" despite multiple requests. AC ¶¶ 60-62. Plaintiff alleges that he "was able to get more thorough compliance" through discovery in this action and from a more recent "forensic auditing of the loan," which "demonstrated [defendants'] deceptive practices and fraudulent claims." AC ¶¶ 62, 81-96. Nevertheless, plaintiff maintains that "[t]his action is not seeking to re-litigate issues, presented and/or decided by the State Court Foreclosure Action." AC ¶ 64; *see also* AC ¶ 18.

Rather, he characterizes this action as an "independent complaint" for "Deceptive Practices, Fraudulent Claims, Fraudulently prepared assignment of Mortgage, related to the State Court Foreclosure Action." AC ¶ 63. Plaintiff maintains that the two actions are "distinguishable" because his "defends [sic] in State Court were never actually litigated on the merits," while the claims in this action "raise much more fundamental problems with the defective and fraudulent procedures of the Defendant's [sic] that were identical [sic] by more recent discovery, a forensic audit by some large scale settlements that involved Federal and State governmental entities, where the issues raised appear in this case." AC ¶ 64.

According to plaintiff, the Foreclosure Action is pending but defendants have been "unable to continue" that action because of "many internal procedural problems raised" in the Amended Complaint. AC ¶ 65. Specifically, plaintiff maintains that state court procedures and orders and the "Settlement Terms" of the settlements with the governmental entities (applicable to pending prejudgment judicial foreclosures) impose an obligation on defendants and/or their attorneys to "re-execute all the sworn documents including the Assignment of Mortgage, Affidavit of Merit and Amount, [sic] Due." AC ¶ 66. Plaintiff claims that if defendants continue the Foreclosure Action, they "would be knowingly perpetrating a fraud in that they are well aware of the ownership and standing defects in their foreclosure and supporting documentation." AC ¶ 67.

Defendants move to dismiss, arguing, *inter alia*, (1) that all of the claims must be dismissed for failure to state a claim upon which relief can be granted; (2) that the first and second claims (the wrongful foreclosure claims) are barred by the *Rooker-Feldman* doctrine; and

(3) that the third claim (to the extent that it is based on the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*) and the fourth claim are time barred.

## II.  DISCUSSION

On a motion to dismiss, the court must assume that all allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party.  *Plair v. City of New York*, 789 F. Supp. 2d 459, 463 (S.D.N.Y. 2011).  To avoid dismissal, a plaintiff is required to plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). While heightened factual pleading is not required, a "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  Thus, a pleading that does nothing more than recite the elements of a claim, supported by mere conclusory statements, is insufficient to "unlock the doors of discovery." *Iqbal,* 556 U.S. at 678.  Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Initially, the Court observes that, contrary to plaintiff's assertions, there is no diversity jurisdiction in this action.  Although plaintiff alleges the existence of diversity because he is "a resident of the State of New York" and Chase is "organized under the laws of the State of Ohio," AC  ¶ 8, he also alleges that Chase "maintains its principal place of business in New York," AC ¶ 3.  Because, for diversity purposes, Chase is also a citizen of New York, *see* 28 U.S.C. § 1332(c)(1), complete diversity does not exist and, therefore, there is no diversity jurisdiction in this action.  *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  Thus, plaintiff's state law claims can only be asserted under the Court's supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a).

Upon consideration of the motion, the Court concludes that plaintiff's federal claims must be dismissed, and the Court declines to exercise supplemental jurisdiction over any remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.).

The only apparent federal claim is the fourth claim – the FDCPA claim.  Plaintiff claims that BNYM violated the FDCPA through the commencement and prosecution of the Foreclosure Action.  According to plaintiff, BNYM is subject to the FDCPA as a "debt collector" because it took an assignment of the alleged debt purportedly when the debt was in default.  AC ¶ 139.  Plaintiff alleges that BNYM "used the foreclosure process to collect the alleged debt," that plaintiff disputed the validity of the debt and BNYM's standing, and that BNYM has failed to provide the correct amount of the alleged debt.  AC ¶¶ 140-41.  Plaintiff claims that BNYM violated the FDCPA by using "false, deceptive or misleading representations in connection with the collection of the alleged debt despite their [sic] awareness of ownership and standing issues that precluded such debt collection."  AC ¶ 143.  In addition, plaintiff claims that Chase violated the FDCPA in that Chase's foreclosure counsel sent a "Debt Collection letter" to plaintiff on January 25, 2012 for the same alleged debt, and foreclosure counsel did not respond to plaintiff's "dispute of debt letter" sent to foreclosure counsel.  Defendants argue that this claim fails to state a claim and is time barred.

As against BNYM, plaintiff fails to state a claim.  As an initial matter, neither the foreclosure summons nor foreclosure complaint is an "initial communication" under the FDCPA, so as to trigger a debt collector's obligations under 15 U.S.C. § 1692g.  *See* 15 U.S.C. § 1692g(d) (providing that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)).

More importantly, plaintiff does not sufficiently allege that BNYM is a "debt collector" within the meaning of the FDCPA.  A "debt collector" is defined as a person either (1) involved "in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects . . . debts owed . . . another."  15 U.S.C. § 1692a(6).  Plaintiff does not allege, nor does he argue in opposition that he can allege, that either BNYM's "principal purpose" is the collection of debts or that BNYM "regularly collects" debts owed another.  Rather, plaintiff alleges that BNYM is a "debt collector" simply "because [BNYM] took an assignment of the alleged debt while the debt was allegedly in default."  AC ¶ 140.  Whether a debt is in default at the time a "person" obtained it is relevant to an exception to the definition of a "debt collector." *See* 15 U.S.C. § 1692a(6)(F)(iii) (excluding from definition of "debt collector" any "person collecting . . . a debt which was not in default at the time it was obtained by such person"); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.").  Because plaintiff does not sufficiently allege that BNYM is a "debt collector" in the first place, the statutory exception is irrelevant.  *See Schlegel v. Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100, 1104 (N.D. Cal. 2011); *Schuh v.*

*Druckman & Sinel, L.L.P.*, No. 07 Civ. 366 (LAK)(GWG), 2008 WL 542504, at *12 n.7 (S.D.N.Y. Feb. 29, 2008).

Moreover, although "actions taken in furtherance of legal action are not, in and of themselves, exempt from liability under the FDCPA," *Gabriele v. Am. Home Mortg. Servicing, Inc.*, No. 12-985-cv, 2012 WL 5908601, at *4 (2d Cir. Nov. 27, 2012) (summary order), as a mortgagor represented by counsel, plaintiff had adequate protection from BNYM's conduct in commencing and prosecuting the Foreclosure Action. Indeed, as the Second Circuit has recognized, "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). In this context, plaintiff's allegations do not state a plausible claim under the FDCPA.

As against Chase, the claim fails because plaintiff does not allege that Chase is a "debt collector." *See* 15 U.S.C. § 1692a(6). Moreover, plaintiff does not allege that Chase sent the "Debt Collection letter" or that Chase failed to respond to the "dispute of debt letter." Rather, plaintiff alleges that foreclosure counsel sent the letter and failed to respond.[2]

As for the third claim, the amended complaint references various state and federal laws purportedly imposing a duty on Chase regarding processing and approving plaintiff's loan application. Respecting federal law, plaintiff references, *inter alia*, 12 C.F.R. § 226.34(a)(4) (repayment ability provision of Regulation Z), and section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45, *et. seq.* However, plaintiff does not argue in his opposing brief

---

[2]Given that plaintiff fails to state a claim for violation of the FDCPA, the Court need not determine whether the fourth claim is also time barred.

that this claim arises under federal law, that it is sufficient to state a claim under federal law, or that it overcomes the specific defenses raised by defendants in their motion.  Indeed, plaintiff offers no response to defendants' arguments (1) that any TILA claim by plaintiff for damages is barred by a one-year statute of limitations, *see* 15 U.S.C. § 1640(e); *Rodriguez v. SLM Corp.*, No. 07cv1866 (WWE), 2009 WL 598252, at *4 (D. Conn. Mar. 6, 2009) ("TILA's statute of limitations runs from the date of consummation of the transaction"); (2) that, even if a right of rescission were applicable here, plaintiff's right to rescind expired three years after the consummation of the loan transaction, *see* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); (3) that the repayment ability provision does not apply to a "residential mortgage transaction," such as plaintiff's loan transaction, *see* 12 C.F.R.  §§ 226.32(a)(2)(i), 226.34(a)(4); *McLean v. Countrywide Home Loans, Inc.*, No. 09-CV-11239, 2009 WL 2777017, at *4 (E.D. Mich. Aug. 27, 2009)[3]; and (4) that no private cause of action exists under FTCA § 5, *see Dolan v. Fairbanks Capital Corp.*, No. 03-CV-3285 (DRH) (MLO), 2005 WL 1971006, at *2 (E.D.N.Y. Aug. 16, 2005) (citing *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)).  To the extent that this claim is based on state law, the Court declines to exercise jurisdiction over it.[4]

---

[3]Notably, neither party points out that a prior version of 12 C.F.R. § 226.34(a)(4) was in effect at the time the Mortgage Loan was originated.  *See ING Bank, FSB v. Am. Reporting Co.*, 843 F. Supp. 2d 491, 497 (D. Del. 2012) (observing that current version of § 226.34(a)(4) not effective until October 2009).  The prior version was similar to the current one but prohibited a "pattern or practice" of extending credit subject to § 226.32 without regard to a borrower's repayment ability as of loan consummation.  *See id.*  Even if plaintiff sufficiently alleges a "pattern or practice," his claim is insufficient, as discussed.

[4]Defendants characterize plaintiff's amended complaint and opposing brief as patently improper because they are "rambling," contain references to clearly irrelevant events, and cite numerous inapplicable statutes.  Defendants' Reply Mem. of Law in Support of Defendants' Motion to Dismiss ("Reply Br."), at 5.  Defendants urge the Court to dismiss the third claim as violating FRCP 8(a)(2), requiring a "short and plain statement of the claim showing that the

11

As for the first and second claims – the wrongful foreclosure claims, plaintiff does not argue that these claims arise under federal law.  To the extent that these claims are based on state law, the Court declines to exercise jurisdiction over them.[5]

### III.  CONCLUSION

For the above reasons, defendants' motion to dismiss the amended complaint is granted to the extent that plaintiff's FDCPA claim is dismissed with prejudice and any remaining state law claims are dismissed without prejudice for lack of jurisdiction.  The Clerk of Court is directed to close the file in this action.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        April 2, 2013

---

pleader is entitled to relief."  *See* Reply Br. at 4.  While the Court does not necessarily disagree with defendants' characterization of plaintiff's papers, it need not reach this ground for dismissal.

[5]Given the dismissal of these claims, the Court need not reach defendants' alternative argument that the first and second claims are barred by the *Rooker-Feldman* doctrine, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-415 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).